**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUNG EUN LEE, SOUNG YOUL CHO, and BULTASA BUDDHIST TEMPLE OF CHICAGO, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 15 C 9378 |
| JEH JOHNSON, Secretary, U.S. Department of Homeland Security; LORETTA LYNCH, U.S. Attorney General; LEON RODRIGUEZ, Director, U.S Citizenship and Immigration Services, | ) ) ) ) ) ) | Judge John Z. Lee |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

After years of delay and various administrative snafus, the United States Citizenship and Immigration Services (USCIS) granted Plaintiff Jung Eun Lee's I-360 visa petition on September 20, 2013.[1] On March 29, 2016, however, USCIS revoked its approval on the basis that Lee could not establish that she had two years of continuous work experience immediately prior to the filing of the petition. Lee argued that she was unable to meet this requirement because of the delays and errors committed by USCIS itself, rather than any fault on her part. Instead of addressing the substance of this argument, the USCIS considered Lee's argument to be an admission that she did not qualify for I-360 visa status.

Lee and her husband, Soung Youl Cho, now seek administrative review of this revocation, as well as other actions taken by USCIS. Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs' factual

---

[1] Because Cho's status is derivative of Lee's, the Court will focus on the proceedings as they pertain to Lee.

allegations, if true, indicate that they were the unwitting victims of a labyrinthine immigration process and agency carelessness; however, for the reasons provided herein, the Court lacks subject matter jurisdiction to hear this case. Accordingly, Defendants' motion to dismiss for lack of jurisdiction is granted.

### Procedural and Factual Background

The factual allegations do not portray USCIS in a favorable light. On November 29, 2005, Cho was admitted into the United States as a nonimmigrant student on an F-1 visa, and Lee was admitted as his spouse on an F-2 visa. *See* 8 C.F.R. § 214.2(f)(1), (3). After they came to the United States, the Bultasa Buddhist Temple of Chicago sought to obtain an R-1 visa for Lee, so that she could serve as the Temple's organist as a nonimmigrant religious worker. *See id.* §§ 214.2(r)(1), 248.3(a). To do so, the Temple applied to change Lee's status from a nonimmigrant spouse of a nonimmigrant student to a nonimmigrant religious worker by filing an I-129 petition on March 17, 2006. *See* Am. Compl. Ex. 3; *id.* §§ 214.2(r)(1), 248.3(a).[2]

The I-129 petition was assigned to the USCIS's California Service Center (CSC). 2d Am. Compl. Ex. 4. Despite Plaintiffs' submission of a premium processing request (and associated fee) in March 2006, the petition remained pending for over three and a half years. *Id.*, Ex. 20, at 1. During that period of time, Plaintiffs did not seek mandamus relief under 28 U.S.C. § 1361 or relief under the Administrative Procedures Act, 5 U.S.C. § 555(b).

On October 19, 2009, Tim Babinski, a CSC representative, sent an email to Judd Azulay, the Temple's immigration attorney, asking whether the Temple was still interested in pursuing the I-129 petition. *Id.*, Ex. 5. Babinski continued, "If so, we were going to approve the petition for the requested dates of 6/1/6 to 5/31/09 and allow you to file an extension for the remaining

---

[2] The Court can consider attachments to the Amended Complaint when deciding the present motion. *See Olson v. Bemis Co., Inc.*, 800 F.3d 296, 305 (2015); Fed. R. Civ. P. 10(c) ("[A]n exhibit to a pleading is a part of the pleading for all purposes.")

period of eligibility (2 years 6/1/9 to 5/31/11)." *See id.*, Ex. 5. (The maximum duration of an R-1 visa is five years. 8 C.F.R. § 214.2(r).) Under this scenario, Lee would have had lawful status for a continuous period from June 1, 2006, to May 31, 2011. *See id.*

The CSC finally approved the Temple's 2006 I-129 petition on October 22, 2009. *Id.*, Ex. 6. According to the notice of approval, Lee's R-1 visa was valid from June 1, 2006, to May 31, 2009. *Id.* Therefore, on the face of the approval notice, Lee's R-1 visa had expired five month before the I-129 was ever approved. *Id.*

Once she received the notice of approval, Lee tried to obtain a Social Security number so that she could begin working for the Temple. *Id.*, Ex. 24, at 2. But the Social Security Office refused her application because the approval notice stated that her R-1 visa had expired. *Id.*

On December 17, 2009, the Temple filed an I-129 petition to extend Lee's visa through May 31, 2011. *Id.*, Ex. 1 at 1. However, rather than approving the extension from June 1, 2009, to May 31, 2011—as Babinski promised—the CSC approved the extension starting from May 11, 2010, to October 22, 2011, thus creating a gap period from June 1, 2009 to May 10, 2010. *Compare id.*, Ex. 6, *with id.*, Ex. 7, at 2.

Lee was able to secure a Social Security number in May 2010. *Id.*, Ex. 24, at 3. The Temple added her to the payroll in July 2010. *Id.*

On November 23, 2010, the Temple filed an I-360 petition on Lee's behalf seeking a classification as a special immigrant religious worker. *See* 8 C.F.R. § 204.5(a); 8 U.S.C. §§ 1101(a)(27)(C)(ii)(II), 1153(b)(4). In support of the petition, the Temple's counsel asserted that Lee had worked for the Temple since October 22, 2009. 2d Am. Compl., Ex. 8, at 3. The CSC denied the I-360 petition on March 28, 2011. 2d Am. Compl., Ex. 8.

3

In its denial, the CSC explained that, because Lee had worked for the Temple during a period when she did not have a valid visa (remember, the gap period was from June 1, 2009, to May 10, 2010), the Temple had failed to establish that Lee had been working continuously "in lawful immigration status" for a two year period prior to the filing of the I-360 petition. *Id.*; *see* 8 C.F.R. § 204.5(m)(4), (11). The Temple appealed the denial, and the Administrative Appeals Office dismissed the appeal on August 13, 2012. 2d Am. Compl., Ex. 10.

After further review, the CSC reopened the Temple's I-360 petition on September 4, 2012, to obtain additional evidence. *Id.*, Ex. 11. The CSC, however, again denied the I-360 petition on May 13, 2013, for the same reason as before, noting that "[t]he petition was reopened in error." *Id.*, Ex. 14.

At this point, Plaintiffs sought the assistance of Representative Michael Quigley and his staff. *Id.*, Ex. 15, 16. On June 12, 2013, the Congressional Unit of the CSC agreed to amend the validity period of the extension of R-1 visa status to indicate that Lee's R-1 visa had been valid from June 1, 2009, to May 31, 2011, thus eliminating the gap period that formed the basis of the CSC's previous denials of the I-360 petition. *Id.*, Ex. 16. On September 24, 2013, the CSC approved the Temple's I-360 petition. *Id.*, Ex. 17, at 5.

Once the I-360 petition was approved, Lee filed an I-485 application with the CSC on December 9, 2013, to adjust her status to become a lawful permanent resident of the United States. *Id.*, Ex. 18. Cho filed an I-485 application as well. *Id.* On December 26, 2013, their applications were transferred from CSC to the USCIS's Nebraska Service Center (NSC). *Id.*, Ex. 19. The USCIS explained that the application was transferred in order to speed up processing of the application. *Id.*

4

While the I-485 applications were pending, Lee applied for an employment authorization document from USCIS and received authorization to work from February 6, 2014, to February 5, 2015. *Id.*, Ex. 21, at 2.

On May 15, 2015, the NSC denied Lee's I-485 application. *Id.*, Ex. 21. The NSC explained that Lee had a status violation from October 23, 2011 (the date that her R-1 visa expired) to December 8, 2013, (the date that Lee filed her I-485 application). *Id.* The NSC also stated that Lee had engaged in unauthorized employment from October 23, 2011, through February 5, 2014 (the date she received work authorization). *Id.* As the NSC noted in its decision, the USCIS regulations do not provide for an appeal of the denial of an I-485 application. Lee's only administrative recourse was to file a motion to reopen or reconsider the adverse decision. *Id.*

Plaintiffs chose instead to file this lawsuit on October 26, 2015. Three months later, on January 20, 2016, the USCIS provided notice to Plaintiffs of the government's intent to revoke the previous grant of the I-360 petition. *Id.*, Ex. 22. The notice provided the following two reasons for revocation:

> Petitioner and counselor failed to provide any documentation in accordance with the regulations at 8 C.F.R. § 204.5(m)(11)(i)-(iii) to demonstrate her employment and compensation prior to October 22, 2009. . . . Consequently, the petitioner failed to establish the petitioner worked continuously in a qualifying religious occupation or vocation for two full years immediately preceding the filing of the petition.
> . . .
> After careful review of the file and all evidence submitted in support of the petition, the Director, California Service Center, agrees that the petitioner has failed to demonstrate that her denomination recognizes the position of choir pianist as a religious occupation and that the duties of the position clearly involve inculcating and carrying out the religious creeds and beliefs of the Buddhist religion.

*Id.*, Ex. 23, Notice of Intent to Revoke, at 3–4.

Lee responded to the notice on February 17, 2016. *Id.*, Ex. 24, Response to Intent to Revoke. With respect to the first point, Lee pointed out:

> The reason Ms. Lee did not have two years of work experience immediately preceding the date the I-360 was filed on November 22, 2010, was caused by the Service Center's unreasonable delay of 3 years, 7 months, and 5 days in adjudicating the initial R-1 petition. It should be also noted that the length of delay . . . prevented the beneficiary form working for the full two years "immediately prior to the date the immigrant petition was filed" because the maximum R-1 period is 5 years and the remaining period of 3 years and 7 months is about 1 year and 5 months, which is less than 2 years.

*Id.*, Ex. 24 at 2. Additionally, Lee provided evidence that the position of Temple choir pianist was a religious occupation. *Id.*, at 3-6.

On March 29, 2016, the USCIS revoked the CSC's prior grant of Lee's I-360 petition. *Id.*, Ex. 25, Notice of Revocation. The USCIS agreed that Lee had successfully established that the position was a religious one. However, the USCIS deemed the above-quoted statement in Lee's response as an admission that Lee did not have two years of continuous work experience immediately prior to the filing of the I-360 petition and revoked the prior approval of Lee's I-360 petition on that basis. *Id.* at 4. ("Unfortunately, the previous statement by petitioner's counsel constitutes an admission and concession of fact that the beneficiary did not possess the two years of continuous work experience immediately preceding the filing of the petition s as required by the regulation.").

On June 16, 2016, Plaintiffs amended their complaint, asserting claims under the Administrative Procedure Act, 5 U.S.C. §§ 701, 702, 706. Plaintiffs seek review of the USCIS's denial of Lee's I-485 application and the agency's purportedly retaliatory revocation of its prior approval of the Temple's I-360 application. Along the way, Plaintiffs also request review of the

6

USCIS's failure to adjudicate Lee's I-129 petition for three years, seven months, and five days, as well as the USCIS's creation of the gap period and initial denials of the Temple's I-360 petition.

Defendants provide two grounds in support of their motion to dismiss. First, they argue that Congress has stripped the courts of jurisdiction to review the merits of the USCIS's revocation of a previously approved visa. Second, they maintain that Plaintiffs fail to state a claim based on the USCIS's denial of adjustment of status because, without a visa, Lee is statutorily ineligible for adjustment. The Court concludes that it lacks jurisdiction to review both the denial of adjustment of status and the visa revocation. As a result, the Court also lacks jurisdiction to review the factual bases for the revocation, and, thus, it is prohibited from reviewing USCIS's delay in adjudicating Plaintiffs' I-129 petition, its creation of the gap period, and its initial denials of Plaintiffs' I-360 petition.

## Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests the jurisdictional sufficiency of the complaint. Fed. R. Civ. P. 12(b)(1). When ruling on a Rule 12(b)(1) motion, "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)). Regardless of whether a party contests jurisdiction, a court has an independent duty to ensure

7

that jurisdiction is proper. *Schaumburg Bank & Trust Co. v. Alsterda*, 815 F.3d 306, 312 (7th Cir. 2016)

**<u>Analysis</u>**

Plaintiffs first seek review of the USCIS's denial of the I-485 application for adjustment of status. Lee's I-485 petition to change her status to a permanent lawful resident is governed by 8 U.S.C. § 1255. But § 1252(a)(2)(B) provides that "no court shall have jurisdiction to review . . . any judgment regarding the grant of relief under section . . . 1255 of this title." 8 U.S.C. § 1252(a)(2)(B). The Court thus lacks jurisdiction to review the USCIS's denial of Lee's I-485 application. *See Ogbolumani v. U.S. Citizenship & Immigration Servs.*, 523 F. Supp. 2d 864, 871 (N.D. Ill. 2007); *Ogbolumani v. U.S. Citizenship & Immigration Servs.*, No. 06 C 6009, 2008 WL 961587, at *1–2 (N.D. Ill. Apr. 8, 2008) (stating that the court was "stripped of jurisdiction to review the decision relating to [plaintiff's] Adjustment of Status" I-485 petition pursuant to 8 U.S.C. § 1252(a)(2)(B)), *aff'd sub nom. Ogbolumani v. Napolitano*, 557 F.3d 729 (7th Cir. 2009); *see also Nwauwa v. Holder*, No. 12 C 2925, 2013 WL 842665, at *3 (N.D. Ill. Mar. 6, 2013).

Plaintiff also asks the Court to review USCIS's revocation of the agency's prior approval of Lee's I-360 petition. The I-360 petition was approved under § 1154(a)(1)(G)(I), which allows "[a]ny alien . . . desiring to be classified under section 1153(b)(4), or any person on behalf of such an alien" to file a petition for such classification. 8 U.S.C. § 1154(a)(1)(G)(I). Section 1153(b)(4), in turn, provides for a limited number of visas for certain qualified "special immigrants," including religious workers. The revocation itself is governed by 8 U.S.C. § 1155, which states that "[t]he Secretary of Homeland Security may, at any time, for what he deems to

8

be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title."

This case falls squarely within the Seventh Circuit's holding in *El-Khader v. Monica*, 366 F.3d 562, 568 (7th Cir. 2004). There, the Seventh Circuit held that a "decision to revoke a previously approved via petition pursuant to 8 U.S.C. § 1155 is expressly left to the discretion of [USCIS]" and thereby outside the court's review under § 1252(a)(2)(B)(ii).[3] This holding was later reaffirmed by the Seventh Circuit in *Holy Virgin Protection Cathedral of the Russian Orthodox Church Outside Russia v. Chertoff*, 499 F.3d 658, 661 (7th Cir. 2007). In that case, much like here, the plaintiff sought review of the Department of Homeland Security's revocation of a religious worker's visa that had been approved previously under 8 U.S.C. § 1154(a)(1)(G)(i). The Seventh Circuit noted that the alien "Kalinicenko's visa, like that of the petitioner in *El-Khader*, had previously been approved under § 1154 and was subject to discretionary revocation." *Id.* at 661. Accordingly, the court concluded that § 1252(a)(2)(ii) stripped the district court of jurisdiction to review the revocation. *Id.* at 661.

For their part, Plaintiffs lean on *ANA International, Inc. v. Way*, 393 F.3d 886, 892–94 (9th Cir. 2004), a Ninth Circuit case disagreeing with *El-Khader*. *See* Pls.' Resp. Br. But the Seventh Circuit has explicitly rejected the reasoning in *ANA International Inc. See Holy Virgin*, 499 F.3d at 661–62 ("[W]e are not persuaded to follow it.").

Plaintiffs also point to *Firstland International Inc. v. INS*, 377 F.3d 127, 131 (2d Cir. 2004), where the Second Circuit held that courts have jurisdiction to determine whether mandatory notice requirements in visa revocation proceedings have been met. The Seventh

---

[3] Section 1252(a)(2)(B)(ii) provides, in pertinent part, that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."

9

Circuit agrees on this point. *Musunuru v. Lynch*, 831 F.3d 880, 888 (7th Cir. 2016). But there is no question in this case that USCIS provided Plaintiffs with the necessary notice of its intent to revoke. *See* Pl.'s Resp. Br.; 2d Am. Compl., Exs. 23, 24.

Next, Plaintiffs argue that *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003), supports jurisdiction. In *Spencer*, the Ninth Circuit held that, because the statute does not specify that the Attorney General's authority to issue an immigrant investor visa under 8 U.S.C. § 1153(b)(5) is discretionary, the district court has jurisdiction to review the denial of an immigrant investor visa. *Id.* In the same vein, *Congregation of the Passion v. Johnson*, a case decided in this district, held that "federal courts have jurisdiction to review denials of I-360 petitions . . . because approval of such petitions is mandatory for beneficiaries who meet the statutory requirements." 79 F. Supp. 3d 855, 859 n.6 (N.D. Ill. 2015).

*Spencer* and *Congregation* are readily distinguishable. Both involved a denial of visa petition, rather than the revocation of a previously granted visa petition. *See Spencer Enters.*, 345 F.3d at 692 (stating that "the decision at issue here is not a revocation"); *Congregation*, 79 F. Supp. 3d at 859 n.6 (recognizing that § 1252(a)(2) bars jurisdiction to review discretionary decisions but does not bar review of mandatory approvals of I-360 petitions for those who meet the statutory requirements). And the difference between the Court's ability to review the denial of a visa petition in certain instances versus the revocation of a previously granted visa petition is rooted in the text of the statute. *See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 493–94 (1st Cir.) ("The difference in these language choices supports our conclusion that Congress intended to treat visa petition denials and revocations of visa petition approvals differently."), *cert. denied*, 136 S. Ct. 2487 (2016). *See also El-Khader*, 366 F.3d at 568 (noting that the agency's regulations requiring that there must be "substantial and probative" evidence to

10

deny a petition "are inapplicable in those instances where [the agency] chooses to exercise its discretion to revoke a visa under § 1155 after a petition for that visa has already been granted").

Furthermore, not only is this Court prohibited from reviewing the USCIS's decision to revoke the petition, but it may not review the factual basis for the revocation. *See Holy Virgin*, 499 F.3d at 663 ("[W]here the Secretary and the Administrative Appeals Office made it clear that they had concluded that the necessary factual basis for Kalinicenko's visa was lacking, . . . there is no further review in the courts."). This means that the Court is precluded from reviewing any facts underlying the revocation determination, including the facts surrounding the manner in which Plaintiffs' visa petition was processed and handled by USCIS.

As for Plaintiffs' claims that the revocation of the I-360 petition was retaliatory, they offer nothing more than conjecture and speculation. Rather than presenting plausible facts to support such a claim, Plaintiffs ask the Court to create an exception to the statutory bar, arguing that if discretionary visa revocations are completely insulated from judicial review, there is potential for abuse, which in turn might have a chilling effect on those seeking to vindicate their rights in federal court. *See* Pls.' Resp. Br. at 16. Unfortunately, given *El-Khader*, *Holy Virgin*, and the clear language of § 1252(a)(2)(B), the Court simply does not have the authority to grant Plaintiffs' request.

Finally, the Court notes that avenues of relief still remain available to Plaintiffs. Plaintiffs may appeal the dismissal of this case and may request that the United States Court of Appeals for the Seventh Circuit revisit *El-Khader* and *Holy Virgin*. In addition, should Lee and Cho be placed in removal proceedings, they may raise these issues before the immigration judge during those proceedings and seek review of constitutional claims or questions of law before the Court of Appeals. *See* 8 U.S.C. § 1252(a)(2)(D).

## **Conclusion**

For the reasons provided herein, the Court grants Defendants' motion to dismiss [30] for lack of jurisdiction.  This case is hereby terminated.


**SO ORDERED**  ENTER:  3/15/17

_____
**JOHN Z. LEE**
**United States District Judge**